# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| MELISSA A. ARROYO, | |
| Plaintiff, | **No. 05-CV-4093-DEO** |
| vs. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, agent of Michael J. Astrue[1], | |
| Defendant. | |

_____

This case involves an application for supplemental security income benefits (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Plaintiff, Melissa Arroyo, (hereinafter "Arroyo"), filed this action requesting reversal of the Commissioner's decision that she is not disabled. After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the Administrative Law Judge ("ALJ") and awards benefits as of February 24, 2003. This is the date that plaintiff reported self-mutilation and is after all of the plaintiff's other reported impairments. Tr. 123.

_____

[1] This case was filed originally against Jo Anne B. Barnhart, who was at that time Commissioner of the Social Security Administration ("SSA"). On February 12, 2007, Michael J. Astrue became Commissioner of the SSA, and he hereby is substituted as the defendant in this action. See Fed. R. Civ. P. 25(d)(1).

## I. INTRODUCTION

Arroyo applied for supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Tr. 46-48. Arroyo's alleged disability onset date is September 1, 1999. Tr 46.

Arroyo's application was denied initially (Tr. 24-27) and on reconsideration (Tr. 31-34). A hearing was held before an ALJ on January 6, 2005. The ALJ determined that Arroyo was not "disabled" within the meaning of the Social Security Act. Tr. 10L. The Appeals Council denied request for review, therefore, the ALJ's decision stands as the final decision of the Commissioner.

## II. BACKGROUND

Arroyo was born on November 8, 1971, and was 33 years old at the time of the hearing. Tr. 230. Her formal education ended following her freshman year of high school, however she obtained her GED in 1980. Tr. 231. Arroyo asserts she has worked as a CNA (nurse's assistant), packer, and housekeeper. Tr. 57.

Arroyo alleges she suffers from the following impairments: "pain in her right wrist and back," "headache

2

pain," "depression," "borderline personality disorder," "problems with her hips, feet, and knees." Docket No. 11, at 2. In addition, plaintiff's brief also recounts her testimony at the hearing that she suffers from "shortness of breath," "sleeping problems," and "sharp pain in wrist and hands." Id.

III.    MEDICAL HISTORY

On November 23, 2001, Arroyo underwent surgery for a fracture in her right wrist. Tr. 153. Arroyo fractured her wrist while "she was out celebrating Thanksgiving." She reported that her knee suddenly gave way and caused her to fall and she injured her hand while trying to stop her fall. Tr. 154.

Following removal of the cast, Arroyo had no immediate complaints of pain. An x-ray on January 7, 2002, showed the bone was in acceptable position. Her doctor noted at that time that the right wrist was "doing well." Tr. 149.

On February 4, 2002, during a recheck of the wrist fracture, Arroyo complained of stiffness and weakness in the right wrist and said she had difficulty moving it at times. Tr. 148. An x-ray revealed a "settling of the distal radius fracture." Id. Arroyo's doctor advised a "vigorous phase of

3

physical therapy."  Id.

On June 20, 2002, Arroyo visited a doctor at Siouxland Community Health Center ("SCHC") and reported problems with headaches and attributed them to head injuries she suffered from fights with women in the past.  Tr. 125.  She also said she was depressed on and off and that she had reduced her smoking to three cigarettes per day.  Id.

On September 4, 2002, Arroyo again went to SCHC.  She complained of numbness in her right pinkie finger and stated that she had experienced it for some time since surgery on her wrist.  Tr. 124.  Arroyo stated that she had been advised to go to physical therapy for her wrist; however, she did not go because she was worried about the cost.  Id.  Arroyo further reported neck pain and headaches that occurred 3-4 times per week.  Id.  An x-ray of Arroyo's neck was normal.  Tr. 136.

On February 24, 2003, Arroyo was having problems with depression and self-mutilation[2].  Tr. 123.  She was not seeing a counselor.  Id.

On March 26, 2003, Arroyo visited the emergency room ("ER") at St. Luke's in Sioux City complaining of a headache

---

[2]  Consisting of self-infliction of cuts on her arms.

4

and dizziness.  Tr. 137.  Arroyo told the physician that the headache had lasted for 3 days and that the pain was sharp and throbbing and the worst of her life.  Tr. 141.  A CT scan of the head seeking to diagnose migraine headaches was negative.  Tr. 146.

On April 8, 2003, Arroyo reported depression and having cut back from drinking one liter of alcohol per day to a pint per day.  Tr. 122.  She also reported sometimes experiencing back pain while bending over to clean.  Tr. 122.  An x-ray of Arroyo's spine revealed a "normal lumbar spine."  Tr. 135.

On July 8, 2003, Arroyo saw Dr. Michael P. Baker, Ph.D. for a psychological evaluation.  Tr. 156-160.  The evaluation was at the request of the Social Security Administration.  Dr. Baker determined that Arroyo "has symptoms of posttraumatic stress and indications of depression."  In addition, he noted that "borderline personality disorder features are significant." Tr. 159.  Dr. Baker opined that Arroyo's mental limitations included maintenance of attention and concentration and pace in order to carry out instructions. Id.

On September 22, 2003, Arroyo presented to Douglas W.

5

Martin, M.D., for a comprehensive examination and report at the request of the Iowa Disability Determination Services Bureau. Tr. 161. Dr. Martin's assessment included "asthma," "migraine headaches," "history of right wrist fracture with residual angular deformity of the mild variety," "history of gastroespohageal reflux disease," "history of depression," "minor lower thoracic musculoskeletal back pain," and "patellofemoral syndrome[3]." Tr. 163.

On December 30, 2003, Arroyo went to SCHC for her annual exam and had "no major complaints or concerns." Tr. 203.

On March 25, 2004, Arroyo called SCHC and reported swelling in her left hand and tingling in and around her lips following a long drag on a cigarette. Tr. 201.

Finally, on September 28, 2004, Arroyo visited SCHC with numbness in her right hand. Tr. 200. She had not been taking her medications because she stated she was not able to afford them.

## IV. ADMINISTRATIVE HEARING

Arroyo appeared via video conferencing before the ALJ.

---

[3] Condition of pain in the front of the knee, also known as "runners knee."

Tr. 228. Arroyo testified that her symptoms of depression include: anxiety, panic attacks, shaking, crying, and self-mutilation. Tr. 233. When asked further questions, Arroyo stated that she cries "a couple of times every day," and the spells last sometimes a couple of minutes and sometimes for hours. <u>Id.</u> Arroyo testified that the panic attacks usually come when she is around people and she feels like people are looking at her or when she is nervous. Tr. 234. She stated she was having a panic attack at the time of the hearing. <u>Id.</u> Arroyo testified that she had been prescribed medications to help her depression, but she only took them from time to time because she could not afford them. Tr. 232.

Arroyo further testified, that "[her] knees are bad." Tr. 235. She declared that her knees are apt to suddenly give way. This affects her walking and makes her legs feel loose after standing or sitting. Tr. 235. She estimated she could walk a couple of blocks before her legs get "wobbly" and she feels like she is going to fall. <u>Id.</u>

Regarding her right wrist, Arroyo testified that it hurts and "locks up" when she does things like flipping channels on

7

the remote, doing dishes, and doing her hair.  Tr. 236.  She said she avoids carrying things with her right hand because she does not have the strength and it can send sharp pains through her hand.  Tr. 236-37.  As a result, she tries to limit the use of her right hand.  Id.

Arroyo also testified about problems with shortness of breath (Tr. 237-38), her back (Tr. 238-39), sleeping (Tr. 239), migraine headaches (Tr. 242), and gastro reflux disease[4] (Tr. 243).  In addition, Arroyo stated she had stopped using alcohol as of "the end of September or the beginning of October."  Tr. 239.

When questioned about her work history, Arroyo stated that she had worked as a nursing assistant, packer, waitress, and housekeeper.  Tr. 241.  She stated that the most she had to lift at those jobs was:  30 lbs. as a housekeeper, 10 or 20 lbs. as a waitress, and 60 lbs. as a packer.  Tr. 250-51.  Arroyo testified that these jobs required her to be on her feet a lot.  Id.  Arroyo went on to testify that she believed her impairments, specifically her inability to be on her feet

---

[4]  Commonly referred to as "GERD", condition in which the liquid contents of the stomach regurgitates back into the esophagus.

for a long time and her wrist problems, have made her unable to do her past job or any other jobs. Tr. 242.

The ALJ questioned Arroyo regarding how she deals with her pain since she is not on medications for the pain. Arroyo responded, "I just wait till it passes." Tr. 245. Additionally, she said that she takes hot baths to alleviate the pain. Id. Arroyo also testified that she does her own cooking and cleaning, but that she has "trouble" and has to take breaks. Tr. 247. She said that she did her own shopping and handled her own finances. Tr. 247-48. Arroyo testified that she has a friend in California who sends her up to $450.00 per month, but that it was not a constant. Tr. 250.

The ALJ asked a vocational expert ("VE") several hypothetical questions. The ALJ started by stating that the claimant was age 33 (27 at the alleged onset date), had completed ninth grade and later received a GED. Based on that background information, the ALJ posed the following questions to the VE:

> The first hypothetical I would limit lifting restrictions to 10 pounds frequently and 20 occasionally. Standing and sitting six hours each in an eight hour work day, not constant but just frequent gross manipulation with the right hand.

9

> Frequent only exposure to environmental
> factors heat, cold, humidity, as well as,
> dust and fumes. As far as mental
> limitations, vocational only independent
> decisions. Frequently only understand,
> remember, and carryout detailed
> instructions. Occasional supervision in
> that must be reminded of tasks two times
> per day. Only vocational interaction with
> the public.

Tr. 252-53. Based on this hypothetical, the VE opined that the claimant would be able to work as a housekeeper as the job is normally performed. Tr. 253. The ALJ proceeded to modify the first hypothetical:

> My second hypothetical would be the same as
> the first except that we'll limit standing
> to 30 minutes at a time and a total of two
> hours in an eight hour work day.
> Everything else stays the same as in
> hypothetical number one.

Id. For the restrictions listed in this hypothetical, the VE opined that the housekeeping job could not be performed. Id. However, based on those guidelines, the VE stated that a number of sedentary bench type occupations existed in the national economy which could be performed despite the restrictions in hypothetical number two. Tr. 254. The ALJ modified the hypothetical again.

> And if I change my hypothetical of only
> this way, if I change the frequent lifting

10

> to 5 pounds and occasional to ten, those
> jobs could still be performed?

Tr. 255. The VE responded, "yes." The ALJ modified the hypothetical again. In this situation, the ALJ hypothesized an individual like in the last hypothetical but who had to alternate standing and sitting every 30 minutes. Tr. 257. The VE opined that jobs still existed that such a person could perform. Id. Finally, the ALJ asked the VE to assume the capacity listed in the last hypothetical along with the condition that the individual has to take four unscheduled breaks of 20 minutes at a time or has to miss three or more days per month. In both cases, the VE said those factors would preclude all jobs. Tr. 258.

Arroyo's attorney asked the VE an additional hypothetical. He asked the VE to assume the situation in hypothetical two and three, but with the added limitation of occasional grasping rather than frequent grasping[5]. Tr. 258. The VE opined that the added limitation would eliminate the jobs he cited for those hypotheticals. Tr. 259.

---

[5] In the first two hypothetical questions, the ALJ referred to "grasping" as "gross manipulation".

11

## V.   ALJ'S DECISION

The ALJ determined that Arroyo retains the residual functional capacity to perform her past relevant work and, in addition, was capable of making a vocational change to other unskilled work which exists in significant numbers in the national economy.   Tr. 10E.   Thus, the ALJ determined that Arroyo was not disabled.   Tr. 10L.

The ALJ referred to the sequential five step analysis required by 20 C.F.R. § 416.920 as the basis of his determination.   For his credibility determination, the ALJ cited the <u>Polaski</u> factors as his guide.   Tr. 10E.

First, the ALJ determined that Arroyo had not engaged in substantial gainful activity since the alleged onset date. Tr. 10E.

Next, the ALJ determined that the medical evidence establishes that Arroyo has severe impairments in combination which include: "depression; borderline personality; asthma; history of migraines; gastroesophageal reflux disease; and pain complaints." Tr. 10K.   However, the ALJ found no single impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P,

12

Regulations No. 4 which allows for a presumption of disability. Tr. 10K. Thus, the ALJ inquired further into the medical record and the testimony of the plaintiff.

The ALJ concluded that Arroyo's complaints were not consistent with the record and therefore found Arroyo to be not credible.

Based on his analysis of the evidence, the ALJ determined:

> The claimant has had the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting more than 20 pounds occasionally and 10 pounds more frequently. She can stand for up to six hours in an 8-hour workday. She can sit for up to six hours in an 8-hour workday. She can frequently perform gross manipulation/handling with her right hand. As based on Exhibit 5F, she can frequently be exposed to heat, cold, humidity, and dust or fumes. She can occasionally make independent decisions. She can frequently understand, remember and carry out detailed instructions. She requires occasional supervision such that she should be reminded of tasks two times a day. She should have only occasional interaction with the public.

Tr. 10K. The ALJ concluded, "The claimant's impairments did not and do not prevent the claimant from performing her past relevant work." Tr. 10K.

13

## VI. DISCUSSION

This Court must determine whether the Commissioner's decision to deny supplemental security income disability benefits is "supported by substantial evidence on the record as a whole." <u>Lorenzen v. Chater</u>, 71 F.3d 316, 318 (8th Cir. 1995).

### A. THE COURT'S JURISDICTIONAL BASIS

In <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a district court's review of a Social Security appeal:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative

14

remedies, he may seek review in federal
district court.  42 U.S.C. §405(g).

<u>Yuckert</u>, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d

119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code

provides, "The final determination of the Secretary after a

hearing . . . shall be subject to judicial review as provided

in section 405(g) of this title. . . ."  In pertinent part, 42

U.S.C. § 405(g) provides:

> Any individual, after any final decision of
> the Commissioner of Social Security made
> after a hearing to which he was a party,
> irrespective of the amount in controversy,
> may obtain a review of such decision by a
> civil action . . .brought in the district
> court of the United States for the judicial
> district in which the plaintiff resides...
> The court shall have power to enter, upon
> the pleadings and transcript of the record,
> a judgment affirming, modifying, or
> reversing the decision of the Commissioner
> of Social Security, with or without
> remanding the cause for a rehearing.  The
> findings of the Commissioner of Social
> Security as to any fact, if supported by
> substantial evidence, shall be conclusive
> . . . . The judgment of the court shall be
> final except that it shall be subject to
> review in the same manner as a judgment in
> other civil actions . . . .

15

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

**B.    THE SUBSTANTIAL EVIDENCE STANDARD**

The Eighth Circuit has made clear its standard of review in Social Security cases.    If supported by substantial evidence in the record as a whole, the Secretary's findings are conclusive and must be affirmed.  <u>Grissom v. Barnhart</u>, 416 F.3d 834, 837 (8th Cir. 2005); <u>Smith v. Shalala</u>, 31 F.3d 715, 717 (8th Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" <u>Maresh v. Barnhart</u>, 438 F.3d 897, 898 (8th Cir. 2006) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). In the words of the Supreme Court, substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citing <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that,

16

"[a] notable difference exists between 'substantial evidence'
and 'substantial evidence on the record as a whole.'"  Wilson
v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (quoting
Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989)).

> "Substantial evidence" is merely such
> "relevant evidence that a reasonable mind
> might accept as adequate to support a
> conclusion." "Substantial evidence on the
> record as a whole," however, requires a
> more scrutinizing analysis.  In the review
> of an administrative decision, "[t]he
> substantiality of evidence must take into
> account whatever in the record fairly
> detracts from its weight." Thus, the court
> must also take into consideration the
> weight of the evidence in the record and
> apply a balancing test to evidence which is
> contradictory.

Id.

    The Court, however, does "'not re-weigh the evidence or
review the factual record de novo.'"  Roe v. Chater, 92 F.3d
672, 675 (8th Cir. 1996) (quoting Naber v. Shalala, 22 F.3d
186, 188 (8th Cir. 1994)).  Likewise, it is not this Court's
task to review the evidence and make an independent decision.
Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996) (citing
Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)).  "If,
after review, [it is] possible to draw two inconsistent
positions from the evidence and one of those positions

17

represents the Commissioner's findings, [this Court] must affirm the denial of benefits." Id. Even in the case where this Court "might have decided the case differently", this Court cannot reverse if there is substantial evidence to support the Commissioner's decision. Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (citing Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner]'s action." Cooper v. Secretary, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)). In cases where the Commissioner's position is not supported by substantial evidence in the record as a whole, the Court must reverse. See Lannie v. Shalala, 51 F.3d 160, 164 (8th Cir. 1995). "'[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.'" Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994) (quoting Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)).

C. DETERMINATION OF DISABILITY

18

Social Security Disability Benefits may be awarded to disabled individuals who meet certain income and resource guidelines. 42 U.S.C.A. § 423 (d)(1)(A). In connection with the award of such benefits to an adult:

> [A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy. . . ." 42 U.S.C.A. § 423 (d)(2)(A).

Determination of a claimant's disability involves a five step analysis. 20 C.F.R. § 404.1520 (a-f). In the first step, the ALJ determines if the Claimant had engaged in past substantial gainful activity. Next, the ALJ decides if the Claimant has an impairment. Third, the ALJ must look at the regulations to determine if the impairment meets or is

19

medically or functionally equal to a Listing in Appendix 1, Subpart P of Regulation No. 4. Fourth, the ALJ assesses the Claimant's residual functional capacity (RESIDUAL FUNCTIONAL CAPACITY), to see if the Claimant could perform his past relevant work. At the fifth and final step of the analysis, the Social Security Commission must prove that there are a significant number of jobs (other than his past relevant work) in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520 (f).

To acquire Social Security supplemental security income disability benefits, initially the claimant has the burden of showing 'that she is unable to perform her past relevant work.'" Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (quoting Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998)). This encompasses the first four steps of the analysis. "If the claimant carries [her] burden, 'the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national

20

economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'"  Id.  There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity and this evidence should address the claimant's ability to function in the workplace.  Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

**D.  REVIEW OF THE ALJ'S DECISION**

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).  By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective complaints of pain, discomfort, or other disabling limitations simply because there is a *lack of objective evidence*.  See

21

<u>Ramirez v. Barnhart</u>, 292 F.3d 576, 581 (8th Cir. 2002) (noting that the ALJ may not discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints of pain). Instead, the ALJ may only discredit the subjective complaints if they are inconsistent with the record as a whole. <u>See</u> <u>Dixon v. Barnhart</u>, 353 F.3d 602, 605 (8th Cir. 2003); <u>see also</u> <u>Bishop v. Sullivan</u>, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under <u>Polaski</u>, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. <u>Polaski</u>, 739 F.2d at 1322. When the ALJ considers all of the <u>Polaski</u> factors and still makes a determination to reject a claimant's subjective complaints, the ALJ must give "good reasons" for discrediting the

Case 5:05-cv-04093-DEO   Document 17   Filed 02/21/07   Page 22 of 31

claimant's testimony.  <u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001).  If an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment.  <u>Id.</u> (quoting <u>Dixon v. Sullivan</u>, 905 F.2d 237, 238 (8th Cir. 1990)).

In this case, the ALJ relied upon reports of non-examining physicians over the opinions of the examining physicians.  In this case, the ALJ relied upon the reports of two non-examining physicians.  Tr. 10-H.  The ALJ states as follows:

> The medical opinions of the state agency psychological consultants are given such significant weight as supports the residual functional capacity found for the claimant.

Tr. 10-H.

The Eighth Circuit has held that reports of non-examining physicians are entitled to little weight.  <u>See</u> <u>Miller v. Heckler</u>, 756 F.2d 679, 682 (8th Cir. 1985).  As mentioned, physicians who did not examine the claimant for disability benefits were recognized and used as the basis of the ALJ's conclusions over the medical opinions of those who did examine the plaintiff.  This was based on the ALJ's perceived lack of credibility by the claimant.  In the case of <u>Estabrook v.</u>

23

<u>Apfel</u>, 14 F. Supp. 2d 1115 (S.D. Iowa 1998), it clearly says that an ALJ improperly relied on the testimony of non-examining physicians over the medical opinions of those who did examine the claimant.  The case of <u>Luther v. Chater</u>, 938 F. Supp. 538, 539-541 (S.D. Iowa 1996), the court holds that the opinion of a doctor who did not personally examine the claimant was not entitled to significant weight.  <u>See</u> <u>also</u> <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1141 (8th Cir. 1982) (en banc).

The ALJ, based upon the opinions of the non-examining doctors, found that the plaintiff could return to her past work.  The burden unjustly remained upon the plaintiff.  The case of <u>Pfitzner v. Apfel</u>, 169 F.3d 566, 569 (8th Cir. 1999), holds that a decision that a claimant can return to past work must be based on more than conclusary statements.  The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affected the claimant's residual functional capacity.  In <u>Branson v. Callahan</u>, 14 F. Supp. 2d 1089, 1096 (N.D. Iowa 1998), the ALJ decided that the claimant could return to his past work but that such a conclusion must be supported by

24

specific findings and based on more than conclusary statements. The ALJ in this case has not set out solid support for his specific finding that this plaintiff can return to her past work.

It is concluded by the Court that the ALJ here erred in not making specific credibility findings regarding the claimant's testimony. Tr. 10-J, ¶¶ 1 and 2; <u>see</u> <u>also</u> Tr. 10K. See the ALJ's conclusions set out on page 11 of this Order. Only a general statement of claimant's work history and the conclusion that the claimant's testimony was inconsistent is given as the ALJ's reason for so finding. Tr. J-10. The Eighth Circuit in <u>Baker v. Apfel</u>, 159 F.3d 1140, 1144 (8th Cir. 1998) found that an ALJ must make specific credibility determinations articulating reasons for discrediting the testimony, providing the inconsistencies and must discuss the <u>Polaski</u> factors in reaching credibility findings. (citing <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

If the ALJ concludes that the claimant's testimony regarding pain should not be accepted, the ALJ must find good reason to refute the claimant's testimony.

On transcript page 10-I of the ALJ's decision, in the

bottom paragraph, the ALJ sets out that at the hearing the plaintiff said that she had a problem with her knee where it would buckle and go numb. Counsel for the defendant argued that while the ALJ has said that it was severe, that severe really did not mean severe and that this was something that the ALJ did not buy because he concluded that the plaintiff was "coloring the truth" which is a nice word for prevarication which is a nice word for lying. In the same paragraph, the ALJ recognized that the plaintiff claimed that she had been able to stand for only five to ten minutes. The ALJ then went on to conclude that this was not really correct and that the plaintiff was again coloring the truth and making that contention. On the same page, the ALJ alleges that the plaintiff claimed that her wrists locked up and that she got sharp pains. Counsel for the government, during argument, said that this was a minimal matter and that the alleged locking of the wrist and the sharp pains were coloring the truth. On the same page 10-I, the ALJ concludes that the plaintiff had back problems. Again, counsel for the defendant said that she was coloring the truth and did not really have those back problems to any serious degree. The claimant also

claimed in the same paragraph, 10-I, that she had shortness of breath. Counsel for the government said that this was a minor manner and that the plaintiff had exaggerated the situation trying to turn shortness of breath into a serious problem. In the same paragraph of 10-I, the ALJ mentioned that the defendant had sleep problems; however, counsel for the defendant argued that this was an exaggeration and that the plaintiff was again coloring the truth. In the same paragraph, the ALJ stated that the plaintiff proclaimed that she was greatly limited with respect to sitting and standing. Counsel for the government again reiterated that this was grossly overstated and plaintiff was coloring of the truth. In the same bottom paragraph of 10-I, the plaintiff said that she was greatly limited with respect to sitting and standing. Counsel for the defendant again stated that this was a minor matter that it would not really be worth discussing except for the fact that the plaintiff was exaggerating. In the same paragraph, the claimant alleged that she has migraine headaches. Counsel for the defendant again argued that there was not really a problem here and that the plaintiff was again coloring the truth. The ALJ in the same paragraph, 10-I,

27

states that this exaggeration resulted in inconsistencies which detract from the credibility of the plaintiff's allegations. The ALJ in the same paragraph says that the plaintiff had sharp pains in her hands and that these over exaggerations for each of these medical problems was a series of inconsistent statements which detract from the credibility of her allegations.

It is clear that the plaintiff here, Ms. Arroyo, never got through the ninth grade, and received a GED some years later. The ALJ concluded, among other statements, that the plaintiff would have a hard time understanding orders and would have to be reminded a couple of times during the day as to just what her duties would entail. Tr. 10K. Therefore, we have a plaintiff who is not as normal and intelligent as many and maybe most of the applicants for an award. The ALJ concluded that Arroyo is crafty, trying to hoodwink the ALJ (as set out in the 10 claims of "coloring the truth" set out above), trying to show that she certainly ought to be entitled to benefits. Now, this crafty woman also openly told the ALJ that she met a person on the network [Internet]. She met personally with this person a couple of times and that this

person decided, on an irregular basis, to send the plaintiff $450.00 a month. This was a matter that involved no bank accounts. A series of sending money without any way for the defendant or anyone else to check on it. This Court is having trouble trying to decide how this claimant, who is short of a full understanding of everything, could be so full of trickery and deceit as to submit falsehoods about her ailments set out above; and yet, then, in an effort to get benefits, she volunteered to the ALJ that she intermittently got $450.00 per month. This admission then gave the ALJ the argument that if she had "all this money" she certainly could have paid for doctor's visits and paid for drugs that she said she did not have sufficient funds to pay for. Again, this crafty deceiver would hardly be consistent in torpedoing her crafty plan to hoodwink the Social Security Administration. For that reason, this Court is having a hard time buying the ALJ's conclusions that this bad lady went way out of her way to deceive in the hopes of getting SSI benefits. This Court carefully read the transcript of the hearing, watched and listened to the arguments and is not persuaded that the plaintiff here had the trickery and deceit in her as argued by the defendant and

29

concluded by the ALJ.

The ALJ does not fairly consider the fact that this claimant had such serious problems that she has been self mutilating herself by cutting her arms. Tr. 123. The same is true of her depression. Id.

The hypothetical questions are not fair or clear. The ALJ and the vocational expert discuss this situation from Tr. 251 to Tr. 260 and end up with several different conclusions, none of which properly include pertinent evidence. Counsel for the plaintiff stated that the hypotheticals are confusing and they do not show all of the problems that she [Arroyo] has; they seem to ignore Dr. Baker's problems even though the government thinks they are in the limitations; and that the ALJ cannot rely on the hypotheticals. This Court is persuaded that the hypothetical questions do not accurately depict Arroyo's impairments.

Based on the foregoing, this Court is persuaded that there is not substantial evidence in the record to support the ALJ's decision; however, this Court is persuaded that there is substantial evidence in the record to establish that Arroyo is disabled.

30

Remanding this case for further proceedings would only delay Arroyo's receipt of supplemental security income benefits (SSI), therefore, "an immediate order granting benefits without remand is appropriate." <u>Cline v. Sullivan</u>, 939 F.2d 560, 569 (8th Cir. 1991); <u>Tennant v. Schweiker</u>, 682 F.2d 707, 710 (8th Cir. 1982). Judgment shall be entered reversing the ALJ's decision of denying such benefits.

**Upon the foregoing,**

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed, and the Commissioner is directed to compute and award supplemental security income disability benefits to Arroyo with an onset date of February 24, 2003.

A timely application for attorney fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Arroyo's attorney wishes to apply for EAJA fees, he must do so within 30 days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 20the day of February, 2007.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa